STEFANO BERIZZI CO., INC., Appellant, *v.* RAW SILK TRADING COMPANY, INC., Respondent.

First Department, October 30, 1925.

**Sales — action by dealer to recover for silk delivered to defendant, another dealer — counterclaims for failure of plaintiff to accept silk for defendant — plaintiff directed defendant as to first of three shipments to hold for further instructions which it failed to give — jury found for plaintiff amount admitted due less, apparently, damages to defendant for failure of plaintiff to accept first shipment — sufficient evidence to go to jury on defendant's ability — plaintiff waived tender by defendant — error to set aside verdict in favor of plaintiff as compromise.**

In an action by a dealer in silk against a dealer in the same commodity to recover for silk, in which the defendant interposed counterclaims based on the failure of the plaintiff to accept and pay for silk, it was error for the court to set aside the verdict in favor of the plaintiff on the ground that it was a compromise and was unsupported by the evidence, since it appears that the verdict was for the amount admitted to be due, less, apparently, damage suffered by the defendant for the failure of the plaintiff to accept the first shipment of silk which the plaintiff directed the defendant to hold for further instructions and thereafter failed to give such instructions, for, while the evidence tends to show that the first of three shipments was in possession of the defendant and ready for delivery at the time the plaintiff advised the defendant to hold for further instructions, there was evidence tending to show that the defendant was not able to complete the contract as to the other two shipments because of its financial difficulties.

There was sufficient evidence to go to the jury upon the ability of the defendant to deliver the silk.

The direction by the plaintiff to the defendant to hold the silk until further instructions waived any right of the plaintiff to have the silk tendered by the defendant upon arrival.

The verdict cannot be said to be a compromise verdict since it appears that it complies with the instructions given by the court and the amount found due the plaintiff was the difference between the amount the defendant admitted was due and the loss to the defendant by the refusal of the plaintiff to accept the first shipment.

APPEAL by the plaintiff, Stefano Berizzi Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of April, 1924, upon the verdict of a jury; also from an order entered in said clerk's office on the 6th day of May, 1924, denying plaintiff's motion to amend and correct said judgment, and also from an order entered in said clerk's office on the 5th day of June, 1924, granting defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Putney, Twombly & Putney* [*Lemuel Skidmore* of counsel; *Edmonds Putney* with him on the brief], for the appellant.

*McManus, Ernst & Ernst* [*Terence J. McManus* of counsel; *Hugo I. Epstein* with him on the brief], for the respondent.

MERRELL, J.:

The second appeal, being from the order which set aside the judgment theretofore entered and ordered a new trial, superseded the appeal from the judgment which had thus been vacated, and raises every question to be considered.

The action was brought by the plaintiff, a dealer in raw silk, to recover of the defendant, also a dealer in said commodity, upon nine separate causes of action based for the most part upon trade acceptances for raw silk delivered by the plaintiff to the defendant. The claims of the plaintiff were conceded by the defendant, and at the trial it was admitted that on such claims of the plaintiff there was due from the defendant the sum of $91,058.20. The defendant, however, in answer to the claims of the plaintiff, interposed two counterclaims in its answer for damages alleged to have been suffered by the defendant because of the failure of the plaintiff to accept and pay for 200 bales of raw silk for which it had contracted with the defendant. There were two separate contracts for raw silk purchased by the plaintiff of the defendant entered into on January 12, 1920, and January twenty-second of that year, respectively. Each of the contracts was for the purchase by the plaintiff of the defendant of 100 bales of Canton filature silk.

While the silk in the two contracts differed slightly in description, concededly the same grade of goods was covered by each contract. The first contract of January twelfth was for delivery of the silk by the defendant to the plaintiff at $11.10 per pound, whereas, under the contract of January 22, 1920, the purchase price was at the rate of $12.50 per pound. The trial of the action was upon the counterclaims thus interposed by the defendant. The total claims of the defendant under its said counterclaims against the plaintiff amounted to $253,495. The 200 bales of silk thus contracted for by the plaintiff were to be delivered by the defendant upon arrival in this country from China during June, July and August, 1920. As understood by the parties and under the rules of the Raw Silk Association, of which both parties were members, about one-third of the silk covered by the contracts was to be delivered in each of the months of June, July and August, 1920. Sixty-five bales of the silk were received by the defendant applicable to said contracts as a part of the June shipment in July, 1920. The defendant, under date of July 29, 1920, wrote the plaintiff as follows: " Referring to contract for Canton 20 /22, please be advised that the portion of June shipment has arrived and would appreciate your giving us shipping instructions for same."

On the day following the plaintiff wrote the defendant in reply to such request for shipping instructions as follows: " Kindly hold the Canton Silk due us against contract, until further instructions."

No further instructions were given by the plaintiff to the defendant, and on October 1, 1920, the vice-president of the defendant again wrote the plaintiff as follows: " Referring to contract for Canton Filature New Style 20 /22, 100 bales at $11.10 per pound and 100 bales at $12.50 per pound, we are still awaiting your shipping instructions for this silk and ask you to please give the above matter your immediate attention."

On October 5, 1920, the plaintiff wrote the defendant referring to this letter of October first, stating: " The above mentioned letter is the first notice received from you in regard to this matter with the exception of your letter of July 29th which refers to the portion of the June shipment under above contracts.

" It seems to us that there was some undue delay to the July and August shipments and therefore we would like to know exactly when this silk arrived on the dock and also why we did not receive notice from you immediately upon arrival of the silk; also please inform us as to the marks and numbers of the silk as well as of the chops and average sizes. Furthermore we are interested to know where you kept this silk in storage since its arrival."

In reply to such letter the defendant, on October 9, 1920, wrote

plaintiff as follows: " Referring to the 200 bales of Canton, we are getting the particulars as required by you and we will communicate with you by next week." And on October 13, 1920, the defendant wrote the plaintiff stating the number of bales and describing each bale of silk, the date of arrival, the steamer upon which the silk came, and the place where the silk had been stored. On October 16, 1920, the plaintiff wrote the defendant as follows: " In regard to contract dated January 12th for one hundred (100) bales of Canton Filature 20/22 King Seng Class New Style, at $11.10 per lb., and contract dated January 22nd for one hundred (100) bales Canton Filature Double Extra "A" Crack New Style 20/22 at $12.50 per lb., we beg to advise that inasmuch as you have failed to make tender of this silk in conformity with the terms of the contracts, we feel obliged to cancel these contracts, and remain."

The letter last above quoted is somewhat ambiguous as to the ground upon which the plaintiff sought to cancel said contracts for the 200 bales of raw silk, the plaintiff stating generally that such cancellation was by reason of defendant's failure " to make tender of this silk in conformity with the terms of the contracts." The evidence is very clear that there was a very sharp decline of about fifty per cent in the market price of raw silk between the time when the 200 bales were ordered and the plaintiff's repudiation of the contracts, which defendant with some reason urges was the real reason why plaintiff sought to cancel the contracts. Indeed, upon the trial plaintiff's president was asked: " Q. If the market was up in October instead of down about 50 per cent. would you have cancelled this contract, do you think? A. We have cancelled contracts. Q. I am asking you, would you have cancelled this contract? A. Perhaps not. Depends upon the price." This decline in the price, as in many cases recently before this court, possibly explains the real cause of plaintiff's refusal to perform the contract and by the testimony last above quoted the plaintiff's president virtually admitted that had there been no decline in market price the contracts would have been performed by the plaintiff.

The plaintiff's contention upon the trial was and upon this appeal is that the defendant was never in possession of the silks in question or in a position to deliver the same, and that no actual tender of the silks covered by the two contracts was ever made. In answer to this the defendant states that it was able to perform at all times, and evidence was given tending to show its ability to place the plaintiff in possession of the silks ordered, upon payment of the purchase price. The defendant was in financial difficulties owing to the decline in market price or for other reasons at the time when delivery of this silk should have been made and

received by the plaintiff and its affairs were in the hands of a creditors' committee. The evidence shows that the silks in question were contracted for by the defendant of Arnhold Brothers & Co., and that one or more banks which had advanced moneys on the silk were in control thereof, and that Arnhold Brothers & Co. held the silks for the benefit of the banks under trust receipts. The defendant, however, gave evidence to the effect that by an arrangement made by the creditors' committee and the bank and Arnhold Brothers & Co. the silks in question were to be delivered to the defendant upon the payment of the purchase price. The court submitted to the jury under the testimony the question as to whether or not the defendant was ready, able and willing to deliver the silks under the contracts. The jury returned a verdict in favor of the plaintiff for the net amount of $52,744. Upon interrogation the foreman of the jury stated that said amount was arrived at by deducting an amount which the jury conceived was justly due the defendant from the plaintiff from the $91,058.20, the verdict representing the balance of plaintiff's claim remaining after satisfying the amount due the defendant under its counterclaim. The counterclaims as amended at the trial set forth in the two causes of action were to recover a gross sum of $139,737.70. The charge of the trial judge was a clear one and I think fairly set forth the contentions of the respective parties. No exception thereto upon which the appellant now relies was taken. The action of the jury was, I think, fairly within the instructions finally given the jury by the court. The court charged the jury that upon the question of damages, if they found upon the counterclaim there was a greater sum due the defendant than was concededly due the plaintiff upon its claims, the jury were to deduct the amount due the plaintiff from that due the defendant and render a verdict in favor of the defendant for the balance. The court further charged the jury: " On the other hand, if you find the amount due to the defendant is less than the amount conceded to be due to the plaintiff, then you must find for the plaintiff."

As before stated, judgment was entered in favor of the plaintiff upon the verdict rendered by the jury in the sum of $52,915.70. Subsequently, upon motion of the defendant, the verdict of the jury was set aside and the judgment entered thereon vacated. In thus setting aside the verdict of the jury and vacating the judgment the court based its action upon the ground that the verdict was a compromise and unsupported by the evidence; that if the jury found in favor of the defendant upon its counterclaims, then the defendant was entitled to receive upon the counterclaims damages by reason of the failure of the plaintiff to accept and pay

for the full 200 bales of raw silk, said damages being measured by the difference between the contract price and the market price on October 16, 1920, when the plaintiff signified its intention to rescind the contracts. It seemed to the court that the jury in arriving at the verdict had found that the reasonable market price of the silk at the time of the breach was $10 per pound, and that there was no evidence in support of such a finding. It is, of course, problematical as to how the jury arrived at the sum which it finally awarded to the plaintiff as balance plaintiff's due, but it is not improbable that such amount was arrived at by the jury upon the assumption that the defendant was ready, able and willing to deliver the bales of raw silk, 65 in number, which arrived in July, 1920, and concerning which the defendant wrote the plaintiff on July 29, 1920, but was never able to deliver the other two installments which arrived later and when defendant's financial difficulties had become more acute. The evidence showed that each of the bales of raw silk was about $106\frac{2}{3}$ pounds to the bale. Computing the difference between the contract price of $11.10 and the market price would amount practically to the sum of $38,314.20. The evidence of the witnesses placed the market price at from $5.25 to $5.75 per pound. The jury may well have considered that $5.50 per pound was a fair market price under the testimony and thus arrived at the sum of $38,314.20 and allowed said sum to the defendant on its counterclaim. Deducting this amount from the $91,058.20 would leave the amount of the verdict, $52,744, rendered by the jury. I am of the opinion that under the testimony there was sufficient to go to the jury upon the ability of the defendant to deliver the silk covered by the contracts, and that by its correspondence with the defendant the plaintiff waived any tender of the silk covered by the contracts and restricted its claim of right to repudiate the contracts upon the failure to make timely deliveries of the silk covered thereby. The only complaint made by the plaintiff in its letter of October 5, 1920, was that there was some undue delay in the July and August shipments, and information was asked of the defendant as to when the silk arrived at dock. This complaint comes with very poor grace in view of plaintiff's express instructions contained in its letter to the defendant of July 30, 1920, to " kindly hold the Canton silk due us against contract until further instructions." I think this letter from the plaintiff to the defendant waived any right of the plaintiff to have the silk tendered by the defendant upon arrival, and that in the absence of any further instructions the defendant was relieved from making tender. It is very clear to me that the real cause of plaintiff's repudiation of said contracts was the sharp

decline in the market price of the commodity covered thereby. It may, however, be that the jury, under the instructions of the court, to which no exception was taken by the defendant, were fairly justified in rendering the verdict they did.

The order setting aside the verdict of the jury and vacating the judgment entered thereon should be reversed, with costs to the plaintiff, appellant, and the verdict and judgment entered thereon reinstated.

CLARKE, P. J., DOWLING, FINCH and BURR, JJ., concur.

Judgment entered April 29, 1924, affirmed, without costs. Order of June 5, 1924, reversed, with costs to the appellant, and the verdict and judgment entered thereon reinstated.